AURORA FARMERS EXCHANGE, APPELLANT, V. BANK OF AURORA, A CORPORATION, IN CHARGE OF D. R. HARRISON, COMMISSIONER OF FINANCE, RESPONDENT.—62 S. W. (2d) 562.

Springfield Court of Appeals, June 19, 1933.

Motion for Rehearing denied July 12, 1933.

*H. H. Bloss* for appellant.

*Farrington & Curtis* and *Paul Barrett* for respondent.

SMITH, J.—This is an appeal from the action of the trial court in refusing to allow a claim as a preferred claim, against an insolvent bank in the hands of the Commissioner of Finance. It is based upon the following affidavit and statement of claim:

## "AFFIDAVIT AND STATEMENT OF CLAIM

State of Missouri  } ss.
County of Lawrence }

Charles Pfitzner, agent and manager of the Aurora Farmers Exchange, of lawful age, being duly sworn on his oath states, that there is due the said Farmers Exchange from the Bank of Aurora, Missouri, Two Thousand Five Hundred and Fifty-Six Dollars and Thirty-Eight Cents, being the balance due on June 13, 1930, which amount is due and unpaid on the following claim, to-wit:

Bal. due on open account, subject to check _____$1,905.62
Bal. of fund out of car of cattle, after bank closed _____ 650.76
   Itemized statement of account attached, identified as "Exhibit A" and made part hereof.
   Preference is claimed on this account because at the time the money was deposited, the Bank was insolvent and known to be so by its officers receiving said money and the $650.76 sale proceeds of car and cattle deposited and received by said Bank after it had been closed by Finance Department of Missouri.
   Total _____$2,556.38
   "Affiant further states that said Aurora Farmers Exchange is not indebted to said Bank in any sum and that said bank is not entitléd to any credit or off-set against this claim. Claimant prays that this claim be approved by the Commissioner of Finance in charge of said bank, conformable to Section 11719, Revised Statutes of Missouri 1919.
                              "CHARLES J. PFITZNER,
                    "Agent and Manager for Above Claimant.
"By J. E. Cahill, Special Deputy Commissioner.
   "Subscribed and sworn to before me this 10th day of November, 1930.
                              "JAMES B. McGUFFIN,
                                 "Notary Public.
   "My commission expires April 1, 1931.
                              "S. L. CANTLEY,
   "Commissioner of Finance of the State of Missouri, in charge of the Property and Business of the Bank of Aurora, Aurora, Missouri.
   "Filed Claim 11-10-30.
         "J. DEWEY MILLS, Circuit Clerk.
   "Filed January 13, 1931.
   " 'Exhibit A' attached to said affidavit and statement is as follows:
   "Aurora Farmers Exchange, Inc., Dealer in Flour, Feeds and Groceries, Aurora, Mo.
   "Balance 5-31-30 _____$ 623.01
   "Deposits 6-3-30 _____ 3781.75
   "Deposits 6-10-30 _____ 581.70
   "Deposits 6-10-30 _____ 564.82
"Balance on check stub 6-11 _____$ 416.07
"Checks out we taken up _____ 1489.55

                                              $1905.62
   "Car of stock sold in St. Louis June 13th _____ 650.76

      "Total _____$2556.38
   "Filed January 13, 1931.
            "J. DEWEY MILLS,
               "Circuit Clerk."

"It may be seen from the foregoing statement that there are two items involved here. Namely $1905.62, and an item for $650.76. The records of the bank, together with oral testimony, show that the item of $1905.62 was a balance due the plaintiff from the bank which had accumulated from a series of deposits for which the plaintiff had been given credit at various times extending over a long period of time, and which balance had not been checked out, and was in the bank subject to check at the time of its closing. The bank closed at its regular closing hour on the afternoon of June 13, 1930, and did not open for business on the morning of June 14, and never thereafter reopened for business. The trial court allowed both items, aggregating $2556.38, as a common claim, and disallowed any part thereof as a preference.

We think the record clearly shows that the item $1905.62 was an unconditional deposit, and that the relation of debtor and creditor existed as to that amount, and there can be no question but that the court properly allowed that as a common claim. But as to the item of $650.76, there is some question about it. The record before us shows that the plaintiff was a corporation, engaged in the business of shipping live stock and selling the same for the owners thereof, for which the plaintiff made a small charge. For some years the plaintiff had shipped the live stock to the Farmer's Live Stock Commission Company in East St. Louis, Illinois. The plaintiff had an arrangement with the Bank of Aurora, whereby the Commission Company in East St. Louis, after making the sale of the live stock and after deducting the charge for making the sale, the freight, yardage, etc., would send the net to the Bank of Aurora. Formerly the Commission Company sent the draft direct to the Bank of Aurora, but for sometime before this last sale, there was an arrangement, in which the plaintiff acquiesced, whereby the Commission Company would take the net proceeds to the National Stock Yards National Bank, and deposit it in that bank to the credit of the Bank of Aurora. The Commission Company would on the day of the sale send by mail a credit advice to the plaintiff advising it that the sale had been made and that the deposit had been made, giving the amount of the deposit that day placed in National Stock Yards National Bank. On the same day the National Bank would also send by mail to the Bank of Aurora an advice that the amount had been deposited with it. When the plaintiff would receive its advice, which was usually the next morning after the deposit was made in the National Bank, a representative would take the advice it had received to the Bank of Aurora, and would then be given by the Bank of Aurora a deposit slip for the amount that had been placed in the National Bank, and the plaintiff was then permitted to check against this deposit.

The evidence shows that the plaintiff through its shipping manager, E. M. Williams, on June 12, 1930, shipped a load of cattle to the

Farmer's Live Stock Commission at East St. Louis, and on June 13, a sale was made and the proceeds deposited in the National Bank, and on that day an advice was mailed by the Commission Company to the plaintiff, and one mailed by the National Bank to the Bank of Aurora. The one mailed to the Bank of Aurora is in words and figures as follows:

"$650.76                        June 13th, 1930.

"Credit to your account for the use of E. W. Williams, Mgr. Deposited by Farmers Live Stock Commission, Shipper Agent to Bank of Aurora, Mo., Advise of Credit—Not negotiable. This advice is valid only when officially signed by an authorized representative of this Bank. Stamped, The National Stock Yards National Bank, National Stock Yards, Illinois. Received June 13th, 1930. J. W. Minton, Vice President."

The advice mailed to the plaintiff reached it on the morning of June 14, but when E. W. Williams undertook to present it for credit and a deposit slip on that morning the bank was closed. It was not clear just when the advice sent to the bank reached it, but it was found in the bank when the liquidating officer took charge. He said he believed it was June 27, when he found it, with other things left by the Bank Examiner. However the plaintiff had not been given credit on the books of the Bank of Aurora, and was not given credit until sometime later by the liquidating officer.

When the Bank of Aurora closed it had funds on deposit in the National Stock Yards National Bank and among which funds was the item of $650.76, and all of which was later drawn out by the liquidating officer and put in a general fund of the bank.

The defendant contends that when under the arrangements the Commission Company placed the money in the National Bank it was in effect a deposit in the Bank of Aurora, and at that time the relation of debtor and creditor between the plaintiff and the Bank of Aurora was created. We cannot agree with the defendant in this contention. The placing of the deposit in the National Bank by the Commission Company did not of itself create the relation of debtor and creditor between the plaintiff and the Bank of Aurora. Under an arrangement between the plaintiff and the bank, the plaintiff was using the bank as its collecting agent and distributing agent for these funds. Primarily the object of plaintiff was to sell live stock for owners. It used the Bank of Aurora as a means for getting and distributing the proceeds of the sales. There would be no question here if the plaintiff had drawn on the Commission Company for the amount of the sale with the privilege of checking on the Bank of Aurora when the draft had been honored and the proceeds deposited in the bank. If under circumstances like that the bank had failed before the funds were returned, or an unconditional entry had been made on its books there would be no question as to the preference.

The plaintiff would be entitled to a preference if there had been an unconditional deposit of the returns. We are unable to see wherein there is any material difference here. The Bank of Aurora under its first arrangement was to receive the deposit by draft, and by later arrangement was to receive advice of the deposit in its correspondent bank, and upon receipt of either the draft or information that it had been deposited to its credit, it would then issue a deposit slip to the plaintiff and permit the plaintiff to check against the account. This evidence does not show that the plaintiff could check on the account when the deposit was made in the National Bank. It no more shows that than it shows a right to check on the bank when the draft was mailed to the Bank of Aurora, when they were using that method. When the Commission Company remitted by draft, the relation of debtor and creditor was not completed between the Bank of Aurora and the plaintiff until the draft reached the bank and it was deposited and the bank had given the plaintiff unconditional credit therefor. The record shows they quit sending the money by draft, but deposited it in the National Bank, but the record also shows that the plaintiff could not check against it until the advice was received and until an unconditional deposit slip was issued. In other words the Bank of Aurora by arrangement, agreement or custom of procedure was a collecting agent for the plaintiff and did not become a creditor of the plaintiff until it had been advised that the money was to its credit in its correspondent bank, and until it had given the plaintiff an unrestricted right to check against the same by issuing to it a deposit slip showing credit had been given in the bank of Aurora.

The advice, heretofore set out, shows that when the deposit was made in the National Bank to the credit of the Bank of Aurora, that it was not an unconditional or general deposit for all purposes, but the advice itself shows that the money was placed there as a credit to the Bank of Aurora account *"for the use of E. W. Williams, Mgr."* This E. W. Williams was the sales manager of the plaintiff who had shipped the live stock to East St. Louis, and this written advice showed this was not an absolute and unconditional deposit in the National Bank, but it is another link in the chain which goes to show the arrangement that the Bank of Aurora was the collecting agent for the plaintiff, and it also shows, when considered along with the other evidence, that the relation of debtor and creditor had not been completed at the time of the deposit in the National Bank, and that it had not been completed at the time the bank closed. As we view it, the item of $650.76 was nothing more than an item of collection in transit and since it was not received by the Bank of Aurora until after it had closed, and the plaintiff was not given unconditional credit for it, the receiver had no right to accept it and mingle it with other funds of the bank, and since he did so receive and retain it, the plaintiff is entitled to a preference for this amount. [Section 5575, Mo. St. Ann. 1929.]

The defendant contends that this was an ordinary deposit received and credited in the ordinary course of business, and should not be given a preference over other claims, and bases this contention largely on the cases of: In re Bank of Pleasant Green, 37 S. W. (2d) 656; Ellington v. Cantley, 300 S. W. 529; and In re North Missouri Trust Co., 39 S. W. (2d) 412.

We think these cases do not sustain the defendant's contention. In the Bank of Pleasant Green case the contention was that the deposit had been made in violation of instructions, and for that reason a preference should be allowed. The court held otherwise because the deposit had reached the bank and the claimant had been given credit. In the instant case no instructions were violated, and the deposit did not reach the bank before it closed. The Ellington case, supra, discussed the difference between a general deposit and a special deposit, and held that the facts in the case did not establish a special deposit. We think that case not in point here, because there was no deposit of $650.76 actually made in the Bank of Aurora and no credit of that amount given to the plaintiff before the bank closed. In the case of In re North Missouri Trust Company, supra, the question was as to whether the deposit, which was actually made, was a general or special deposit.

As we view the testimony in this case there was no completed deposit of $650.76 with the Bank of Aurora at the time of its closing and the liquidating officer had no right to complete the deposit after the bank closed, and, since the liquidating officer did receive the funds after the bank was closed, such funds constituted no part of the assets of the bank.

It is our conclusion that this judgment should be reversed and the cause remanded with direction that a judgment should be entered allowing $650.76 as a preferred claim and $1905.62 as an ordinary or common claim. It is so ordered. *Allen, P. J.,* and *Bailey, J.,* concur.